UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CR198 HEA |
| | ) | |
| GARY MCMULLIN, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the Memorandum and Recommendation, [Doc. No. 53], of United States Magistrate Judge Lewis M. Blanton, pursuant to 28 U.S.C. § 636(b), in which Judge Blanton recommends that Defendant's Motion to Suppress Evidence, [Doc. No. 26], be denied. Defendant has filed Objections to the Memorandum and Recommendation.

When a party objects to a magistrate judge's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objected. See *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)). This includes a *de novo* review of the magistrate's findings of fact, including any credibility determinations. *Id*. The court has reviewed the entire record, including listening to the audio recording of the hearing held on February 28, 2008, and reading the

transcript thereof.

## Discussion

Defendant objects to Judge Blanton's Report and Recommendation, arguing that the right he is alleging was violated by Marshal Sean Newlin's "movement into his house." In further explanation, Defendant continues to argue there is no application of the plain view doctrine unless and until there is a lawful means for law enforcement to be inside the house. Thus, the analysis hinges upon whether Deputy Newlin was legitimately within Defendant's home when he saw the guns in plain view.

Judge Blanton credited Deputy Newlin's testimony as more credible than Defendant's. The Court's independent review of the record, listening to the audio tape of the hearing and reading of the transcript supports the Court's conclusion that Deputy Newlin is indeed more credible than Defendant in describing the events which occurred. Deputy Newlin was very forthcoming in his responses. He acknowledged that he did not provide Defendant with any *Miranda* warnings; he further acknowledged that he asked to be admitted into Defendant's residence. He likewise admitted that he had not seen the guns during his initial entry into the residence. Further, although he would be interested in maintaining the validity of the arrest, Deputy Newlin had no vested interest in fabricating the details of the

events.

Defendant, on the other hand, indeed has a vested interest in describing the events in a way as to favor his position. Defendant, himself a convicted felon, allowed another convicted felon, (one who was required to register as a sex offender and did not), to reside in his home. Furthermore, Defendant lied to Deputy Newlin as to this convicted felon's identity. While testifying about these lies, Defendant's response was "of course" he knew of Crowder's real name and "of course" he lied about it, as if lying was to be expected and was acceptable. On balance, this Court finds Deputy Newlin's testimony to be more credible than that of Defendant in describing the course of events giving rise to Defendant's ultimate arrest.

Deputy Newlin's version of the events is detailed in the Report. Deputies Newlin and Davis appeared at Defendant's home. Newlin approached the front door as Davis went around to the back. Newlin heard someone from within announce in a loud voice the Deputies' arrival. Upon reaching the front door, Newlin requested, and was granted entry into the home. Defendant stated that he was having coffee with his uncle. He followed Defendant to the kitchen area where he observed three coffee cups on the table, when Defendant had just stated that he was alone with his uncle Carroll. Around that point, Newlin heard Davis ordering someone to "get down" in the back. Defendant directed Newlin to the back yard,

where both he and Newlin joined Davis and Daryl Crowder, the person for whom the Deputies had an arrest warrant. At that point, Defendant lied to Newlin several times about Crowder's identity, and subsequently admitted that he knew who Crowder really was. Newlin handcuffed Defendant for the safety of himself and Davis. Newlin was justified in this concern: Defendant had just lied about Crowder's identity and it was clear at that point that Newlin's information about Crowder's whereabouts had been confirmed. Crowder had been at Defendant's residence, even though Defendant had just previously advised Newlin that it was just himself and his uncle having coffee. Yet another lie by Defendant in an effort to allow Crowder to avoid apprehension. Newlin had no basis to trust Defendant with respect to his safety. Furthermore, Newlin did not know what Defendant's uncle and aunt were doing in the house. Newlin was justified in concern for the Deputies' safety and maintaining the status quo.

Defendant takes issue with the finding that his consent to enter his residence was never withdrawn. In support of this position, Defendant argues, in effect, that he was afraid he would be hurt in some way if he protested and that he expressed a lack of consent in the only means it could be done that would not result in punishment. Defendant argues that rather than saying he would not go back in the house, Defendant said, or indicated that he could not get back in the house. There is

no evidence in the record to support Defendant's argument that Newlin's assistance of Defendant back into the house was Defendant's implicit way of withdrawing his consent for Newlin to enter his residence. There is nothing in the record to indicate that Defendant was so intimidated by Newlin that he feigned inability to maneuver the steps. See *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir. 2004). Defendant had to be assisted by Newlin to get back into the house because of the configuration of the entry. Defendant's original consent was never withdrawn.

Defendant argues that he is not claiming Newlin reentered the house to search, rather, he is pointing out that, as the reason to approach the house ended with Crowder's arrest, reentering the house could only have been a search. To the Court, it appears that Defendant is arguing precisely what he claims he is not. In any event, there was indeed a reason for reentering the house. Defendant's aunt and uncle were still in the house. Newlin had no idea what they were capable of considering the circumstances of the Deputies' presence. Newlin testified that his concern was now keeping the situation under control, which included knowing what the other people on the scene were doing. Defendant's argument attempting to belittle Newlin's concerns of officer safety are too unpersuasive. The events which occurred subsequent the Deputies' arrival clearly give rise to valid concerns for officer safety, and maintenance of the status quo, which was not fixed until Newlin

could supervise the remaining occupants of the home.

Once legitimately back inside the residence, the discovery of the ammunition and guns in plain view was likewise proper. Newlin did not conduct a search at that time, rather, he observed the ammunition and inquired about guns. Defendant pointed in the direction of the guns which were clearly out in the open. Defendant's aunt volunteered the location of the hand gun. The Supreme Court, in *Coolidge v. New Hampshire,* held that "under certain circumstances the police may seize evidence that is in plain view without a warrant." 403 U.S. 443, 465 (1971). However, the Supreme Court is cautionary, that "the problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal." *Id.* "The plain view doctrine permits law enforcement officers to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *United States v. Weinbender,* 109 F.3d 1327, 1330 (8th Cir.1997). "[T]he 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object."

*Horton v. California,* 496 U.S. 128, 135 (1990). The discovery of the guns falls squarely within the plain view doctrine. As such, seizure of the guns was proper and their discovery should not be suppressed.

## **Conclusion**

Having conducted a *de novo* review of the Motion and the record before the court, Defendant's objections are overruled. The Report and Recommendation contains a very thorough analysis of the facts and applicable law. The Court, therefore will adopt Judge Blanton's Recommendation.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence, [Doc. No. 58], is **DENIED**.

Dated this 17th day of June, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE